UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DIANA WERNER, individually and on behalf of
others similarly situated,

Plaintiff,

v.

SELENE FINANCE, LLC, and FRIEDMAN
VARTOLO, LLP,

Defendants.

No. 17-cv-06514 (NSR)
OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge

Plaintiff Diana Werner ("Plaintiff") brings this putative class action on behalf of herself
and those similarly situated, pursuant to 15 U.S.C. §1692, *et. seq*, the Fair Debt Collection
Practices Act ("FDCPA"), against Defendant Friedman Vartolo, LLP ("Defendant FV") and
against Selene Finance, LLC ("Defendant Selene") asserting the following New York law claims:
(1) Breach of contract, (2) deceptive trade practices under New York General Business Law § 349,
(3) unjust enrichment, (4) breach of fiduciary duty, (5) misrepresentation, (6) defamation, (7) bad
faith, (8) negligent infliction of emotional distress, (9) intentional infliction of emotional distress,
(10) tort of outrage, and (11) unconscionability. (Am. Notice of Removal, Ex. A ("Complaint"),
ECF No. 7.) Presently before the Court are Defendants' motions to dismiss the Complaint pursuant
to Federal Rule of Civil Procedure Rule 12 (b)(6). (ECF Nos. 19 & 27.)

For the following reasons, Defendant FV's motion to dismiss is DENIED and Defendant
Selene's motion to dismiss is GRANTED.


USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/22/2019

# BACKGROUND

The following facts are derived from the Complaint, documents attached or referenced in the Complaint, and matters of which the Court may take judicial notice and are accepted as true for the purposes of this motion.[1]

On or about February 25, 2008, Plaintiff received a $400,000 loan from SunTrust Mortgage, Inc. ("SunTrust"), and she executed a note and mortgage ("Mortgage Loan") on her property at 11 Weitz Road, East Fishkill, New York ("Property") as collateral.[2] (Compl. ¶ 22); (Def. Selene's Mot. to Dismiss Ex. 2 ("Mortgage Agreement"), ECF No. 20-1.) The Mortgage Loan was recorded on April 23, 2008. (*Id.*) The Mortgage Agreement required Plaintiff to make installment payments on specified dates and to pay the entire debt to the debtholder if she defaulted. (*Id.*) On or about October 1, 2009, Plaintiff defaulted on her obligation to make regular payments. (*Id.*) Thereafter, SunTrust commenced a mortgage foreclosure action ("Foreclosure Action") in New York State Supreme Court, County of Duchess.

Around October 2015, Plaintiff received a letter from Defendant Selene, dated October 26, 2015, which indicated that it was about the Mortgage Loan.[3] (Def. Selene's Mot. to Dismiss Ex. 1 ("Trial Modification Plan Letter")); (Compl. ¶¶ 21 & 24.) Specifically, the subject line of

---

[1] When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and which are either in the plaintiff's possession or which the plaintiff knew about when bringing suit, or matters of which judicial notice may be taken. *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002); *Brass v. Am. Film Techs, Inc.,* 987 F.2d 142, 150 (2d. Cir. 1993); *Winfield v. Citibank, N.A.,* 842 F. Supp. 2d 560, 564 (S.D.N.Y. 2012). The Court may consider documents from a prior action when considering a motion to dismiss under Rule 12 (b)(6) based on res judicata. *Senatore v. Ocwen Loan Servicing, LLC,* No. 16-CV-8125(VB), 2017 WL 3836056, at *1 n.1 (S.D.N.Y., Aug. 30, 2017) (citing *TechnoMarine SA v. Giftports Inc.,* 758 F.3d 493, 498 (2d Cir. 2014); *Day v. Moscow,* 955 F.2d 807, 811 (2d. Cir. 1992)).

[2] The Court may consider the Mortgage Agreement. Plaintiff relied upon the Mortgage Agreement in bringing her suit. Without the Mortgage Agreement, there would have been no trial modification plan letter which is at the core of some of Plaintiff's claims. (Compl. ¶ 21). Additionally, it is clear from Plaintiff's signature from February 2008 in the document that she knew about the Mortgage Agreement in bringing the suit.

[3] The Court may consider this letter and payment plans contained in the letter because Plaintiff references the letter in her Complaint. (Compl. ¶ 24.)

the Trial Modification Plan Letter included the loan number and the address for the Property, and the letter included the date and amount of the Mortgage Loan on the next page. (Def. Selene's Mot. to Dismiss Ex. 1.) In the opening sentence, Plaintiff is "offer[ed] the enclosed Trial Modification Plan . . . as the first step to retain [her] home." (Def. Selene's Mot. to Dismiss Ex. 1.) Additionally, the Trial Modification Plan Letter specified that Plaintiff "must comply with all of the terms to be considered for a modification or other permanent assistance" and that Plaintiff should return the "signed and initialed Agreement" to Defendant Selene by November 9, 2015. (*Id.*); (Compl. ¶ 21.) However, the Trial Modification Plan Letter appeared to propose two different payment schedules. (Compl. ¶ 23.)

The first payment schedule ("first schedule") was explained on page two of the Trial Modification Plan Letter under the heading "Trial Modification Plan." (Def. Selene's Mot. to Dismiss Ex. 1.) There, Plaintiff first was reminded that she was in default on the February 25, 2008 Mortgage Loan and then was provided with a trial payment plan. (*Id.*) The plan included a list of seven scheduled payments,[4] the first due on October 30, 2015 in the amount of $5,343.82, with set dates and payment amounts. (*Id.*) In total, the seven payments amounted to $20,606.38. Upon completion of the trial payment plan, the loan would be modified according to specified

---

[4] In her Complaint, Plaintiff refers to this payment schedule as Agreement B. For ease of reference, because this payment schedule actually appears first in the Trial Modification Plan Letter, the Court will refer to it as the "first schedule." The first schedule provides as follows: $5,343.82 due by October 30, 2015; $2,543.76 due by November 15, 2015; $2,543.76 due by December 1, 2015; $2,543.76 due by January 1, 2016; $2,543.76 due by February 1, 2016; $2,543.76 due by March 1, 2016; and $2,543.76 due to by April 1, 2016. (Def. Selene's Mot. to Dismiss Ex. 1); (Compl. ¶ 27.)

terms.  (*Id.*)  Plaintiff initialed each page of the Trial Modification Plan and signed on the signature line on page five.  (*Id.*)

Page six of the Trial Modification Plan Letter seems to introduce a second payment schedule ("second schedule") and states that the attached authorization agreement "when signed by [Plaintiff] and returned to Selene, will evidence [Plaintiff's] agreement to establish automatic transfers from [her] bank account on draft dates and draft amounts shown on the attached agreement."  (*Id.*)  The final page, titled Authorization Agreement for Preauthorized Payments, contains a list of six draft dates and payment amounts,[5] with the first payment to be made on November 15, 2015 in the amount of $3,543.76.  (*Id.*)  The six payments totaled $16,662.56.  Plaintiff did not sign her name on the line for the borrower's signature on that page of the letter.  (*Id.*)

On November 9, 2015, Plaintiff made an initial payment to Defendant in the amount of $3,573.76.  (Compl. ¶ 28); (Pl.'s Opp'n to Selene Ex. 2.).  Defendant informed Plaintiff that her payment was short because the initial payment due was actually $5,343.82 which was the required initial payment under the first schedule.  (Compl. ¶ 29.)  Accordingly, Plaintiff sent Defendant $1,800.07 by check dated November 19, 2016, making her total payment to that point $5,375.83.  (*Id.* ¶ 30.)  Along with the check, Plaintiff submitted a letter asking Defendant for clarification on the payment schedule. (*Id.* ¶ 31.)  Plaintiff proceeded to send checks to Defendant, which were cashed, for the December 2015 through April 2016 payments. (*Id.* ¶¶ 32 – 38.)  Plaintiff alleges that her payments were submitted in accordance to the second schedule,

---

[5] In her Complaint, Plaintiff refers to this payment schedule as Agreement A.  For ease of reference, because this payment schedule actually appears second in the Trial Modification Plan Letter, the Court will refer to it as the "second schedule." The second schedule was as follows: $3,543.76 due by November 15, 2015; $2,943.76 due by December 1, 2015; $2,543.76 due by January 1, 2016; $2,543.76 due by February 1, 2016; $2,543.76 due by March 1, 2016; and $2,543.76 due by April 1, 2016. (Def. Selene's Mot. to Dismiss Ex. 1); (Compl. ¶ 26.)

but the required amount for the December 1, 2015 payment in that schedule was $2,943.76 and Plaintiff's check for that December payment, which was submitted late due to UPS's unavailability over the Thanksgiving holiday weekend, was only for $2,543.76.[6] (Compl. ¶ 32); (Mem. of Law of Law by Pl. Diana Werner in Opp'n to Def. Selene Finance, LLC's Mot. to Dismiss ("Pl.'s Def. Selene Opp'n") (attaching the check Plaintiff references in her Complaint), ECF No. 21.)) Plaintiff's remaining payments were made for $2,543.76 and were timely through the conclusion of both payment schedules on April 1, 2016. After the end of both payment schedules, Plaintiff submitted payments for May and June 2016, each for $2,543.76, which were also cashed by Defendant. (*Id.* ¶¶ 39 – 40.) Plaintiff alleges that despite "receiving regular payments from Plaintiff and depositing those checks, Defendants accused her of default and threatened her with foreclosure and the prospect of losing her home." (*Id.* ¶ 41.) Defendant Selene then breached the Trial Modification Plan by reporting Plaintiff to credit reporting agencies and partnering with Defendant FV to collect on the Mortgage Loan. (*Id.* ¶¶ 43 & 45.)

Meanwhile, on January 14, 2016, the debtholder was granted a judgment of foreclosure and sale in the Foreclosure Action.[7] (Def. Selene's Mot. to Dismiss ("Foreclosure Judgment") Ex. 8.) Around October 10, 2016, Defendant FV, on behalf of Defendant Selene, attempted to

---

[6] The Court is not required to accept factual allegations that are demonstrably false. *See New Line Intern. Releasing, Inc. v. Marty Toys (USA), Inc.*, No. 91-CV-8638(JFK),1995 WL 347381, at *3 (S.D.N.Y. June 8, 1995). Here, other allegations in the Complaint, that the check was for less than the amount required for the December payment under the second schedule, and documents referenced in the Complaint, the check for the December payment, demonstrate that Plaintiff's claim that she submitted payment according to the second schedule is false. (Compl. ¶¶ 26 (alleging that the second schedule requires $2,943.76 to be paid by December 1, 2015) & 32 (stating that Plaintiff's check for the December 1, 2015 payment was for $2,543.76)); (Mem. of Law of Law by Pl. Diana Werner in Opp'n to Def. Selene Finance, LLC's Mot. to Dismiss ("Pl.'s Def. Selene Opp'n"), ECF No. 21 (attaching the check for the December 1, 2015 payment)). The Court may consider Plaintiff's checks for the December 2015 through June 2016 payments when deciding the motions to dismiss because Plaintiff references those checks in her Complaint. (Compl. ¶¶ 32 – 40.)

[7] The Court may consider the Foreclosure Judgment when deciding whether to dismiss Plaintiff's claims against Defendant Selene due to res judicata because the Foreclosure Judgment is a document from a prior action. *Senatore v. Ocwen Loan Servicing, LLC*, No. 16-CV-8125(VB), 2017 WL 3836056, at *1 n.1 (S.D.N.Y., Aug. 30, 2017).

5

collect on the Mortgage Loan by sending Plaintiff a letter on Defendant FV's letterhead ("Collection Letter"). (Compl. ¶¶ 115 – 18.) The Collection letter began with the heading "THE FAIR DEBT COLLECTIONS PRACTICES ACT" and informed Plaintiff that Defendant FV represented Defendant Selene in connection with the Mortgage Loan. (*Id.* ¶¶ 120 – 21.) The letter included required disclosures under the FDCPA and informed Plaintiff that she was in default on her loan. (*Id.* ¶¶ 122 – 23.)

Plaintiff filed the instant action in state court on June 27, 2017. On August 25, 2017, Defendant Selene removed the action from state court to federal court, pursuant to 28 U.S.C. §§ 1331, 1441 and 1446. (ECF No. 1.) Defendant Selene filed an amended notice of removal, adding Defendant FV who consented to the Removal, on August 30, 2017. (ECF No. 7 & Ex. B.)

## STANDARD ON A MOTION TO DISMISS

Under Rule 12(b)(6), courts must consider whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 662 (quoting *Twombly*, 550 U.S. at 555). A claim is facially plausible when the factual content pleaded allows a court "to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

To survive a motion to dismiss, a complaint must supply "factual allegations sufficient 'to raise a right to relief above the speculative level.' " *ATSI Commc'ns, Inc. v. Shaar Fund,*

*Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). At the motion to dismiss stage, courts must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but courts are "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Although courts are generally confined to the facts alleged in the complaint for the purposes of a motion to dismiss, *Cortec Indus. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991), courts may also consider documents referenced in the complaint, documents the plaintiff relied on in bringing suit and which are either in the plaintiff's possession or which the plaintiff knew about when bringing suit, on matters which judicial notice may be taken. *Chambers v. Time Warner, Inc.*, 282 F.3d. 147, 153 (2d. Cir. 2002); *accord DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d. Cir. 2010).

## DISCUSSION

Defendants each move to dismiss Plaintiff's claims. Defendant FV, against whom Plaintiff asserts a claim for violation of the FDCPA, argues that Plaintiff's FDCPA claim must be dismissed because that statute does not apply to mortgage foreclosure proceedings and because, in the alternative, any inaccuracies in the Collection Letter were immaterial. Defendant Selene, against whom Plaintiff asserts claims under New York statutory and common law, argues that Plaintiff's

claims are barred by res judicata and collateral estoppel and that, even if the Court finds that those

doctrines do not apply, Plaintiff fails to state any claim against Defendant Selene.

## I.       Sufficiency of FDCPA Claim

To state a claim under the FDCPA, a plaintiff must demonstrate that: (1) the plaintiff is a

person who was the object of efforts to collect a consumer debt; (2) the defendant is a debt

collector as defined in the statute; and (3) the defendant has engaged in an act or omission in

violation of the FDCPA.  *Cohen v. Ditech Fin. LLC,* 15-CV-6828, 2017 WL 1134723, at *5

(E.D.N.Y. Mar. 24, 2017) (citing *Scaturro v. Northland Grp.*, No. 16-CV-1314, 2017 WL

415900 at *2 (E.D.N.Y. Jan. 9, 2017)).

First, Plaintiff's Complaint states a facially plausible claim that Plaintiff was the object of

efforts to collect a consumer debt, the Mortgage Loan.  (Compl. ¶¶ 21 – 27); *Hooks v. Forman

Holt Eliades & Ravin LLC*, No. 11-CV-2767(LAP), 2015 WL 5333513, at *9 (S.D.N.Y. Sept.

14, 2015) (holding that a letter providing "notice of mortgage foreclosure" was a communication

to collect a consumer debt under the FDCPA).  Second, Defendant FV is a debt collector[8] for the

purposes of the FDCPA which, in relevant part, defines "debt collector" to include "any person

who uses any instrumentality of interstate commerce or the mails in any business the principal

purpose of which is the collection of any debts, or who regularly collects or attempts to collect,

directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C.

§ 1692a.

However, Defendant FV contends that Plaintiff fails to plausibly establish the final

element because a mortgage foreclosure is, categorically, not a debt collection action covered by

---

[8] To the extent that Defendant FV asserts that it is not a debt collector for the purposes of the FDCPA
because a mortgage foreclosure cannot be a debt collection action, that argument fails because the Court determines
that a judicial mortgage foreclosure can be a debt collection action.

that statute.  However, courts in the Second Circuit have rejected this argument and held that a

mortgage foreclosure could be a debt collection under the FDCPA.[9]  *Weaver v. Boriskin*, 751 F.

App'x 96, 99 (2d Cir. 2018); *Cohen v. Rosicki, Rosicki & Associates, P.C.*, 897 F.3d 75, 84 (2d

Cir. 2018); *Hooks v. Forman Holt Eliades & Ravin LLC*, No. 11-CV-2767(LAP), 2015 WL

5333513, at *11 (S.D.N.Y. Sept. 14, 2015).  In *Cohen*, the Second Circuit expressly rejected the

argument that foreclosure proceedings fall outside the scope of the FDCPA solely because the

debt is secured by real property. 897 F.3d at 84.  "[T]o accept the defendants' argument and

exclude *in rem* proceedings from the scope of the FDCPA 'would create an enormous loophole

in the [FDCPA] immunizing any debt from coverage if that debt happened to be secured by a

real property interest and foreclosure proceedings were used to collect the debt.' "*Id.* (quoting

*Wilson v. Draper & Goldberg, PLLC*, 443 F.3d 373, 376 (4th Cir. 2006)).

These decisions are consistent with the purpose of the FDCPA, which is to curb "abusive,

deceptive, and unfair debt collection practices by . . . debt collectors." 15 U.S.C. § 1692.  Just

because a debt is secured by real property does not mean that the debtor is not in danger of

falling victim to unfair debt collection practices incidental to a judicial foreclosure.  Moreover,

drawing all reasonable inferences in Plaintiff's favor as required on a motion to dismiss, it would

---

[9] The Supreme Court recently decided a similar but distinct issue in *Obduskey v. McCarthy & Holthus LLP*, No. 17-CV-1307, 2019 WL 1264579, (Mar. 20, 2019).  In that case, a mortgagor, the plaintiff, had defaulted on a mortgage loan and the mortgage loan servicer, to whom the mortgage debt had been assigned, initiated nonjudicial foreclosure proceedings against the plaintiff. *Id.* at *3. The plaintiff filed a complaint against a mortgage loan servicer and the law firm representing the servicer. *Id.* The plaintiff alleged, among other claims, that the law firm's collection letter violated the FDCPA. *Id.* The Supreme Court held that the FDCPA did not apply because the collection letter was sent in the context of nonjudicial foreclosure proceedings. *Id.* at *6 – 7. "[B]ut for § 1692f(6), those who engage in only nonjudicial foreclosure proceedings are not debt collectors within the meaning of the Act." *Id.* at *6. In nonjudicial foreclosure proceedings, which are only permitted in about half of the states in the United States, "notice to the parties and sale of the property occur outside court supervision." *Id.* at *3.  Unlike in *Obduskey*, the forfeiture here was judicial, meaning that it was a legal action initiated by the creditor. *Id.* at *2. *Obduskey* only concerned a nonjudicial foreclosure and an entity regularly engaging in nonjudicial foreclosures. There is no allegation here, and it is certainly not clear from the face of the Complaint, that Defendant FV was collecting or attempting to collect on nonjudicial foreclosures. Therefore, because the issue here involves a judicial foreclosure, the Court will proceed under existing binding precedent for judicial foreclosures.

be disingenuous for the Court to construe the Collection Letter as anything but an effort at debt collection.  The Collection Letter[10] has a "FAIR DEBT COLLECTION PRACTICES ACT" heading and contains mandatory disclosures required by that act.  (Compl. ¶¶ 120 & 122); *Hooks*, 2015 WL 5333513, at * 11 (holding that while one purpose of a letter was mortgage foreclosure, it also had a debt collection purpose because it contained the language "NOTICE PURSUANT TO THE FAIR DEBT COLLECTION PRACTICES ACT").  Thus, the Court disagrees with Defendant FV and finds that the FDCPA may apply to collection efforts connected to judicial mortgage foreclosure proceedings.

Next, Defendant FV asserts that Plaintiff cannot recover under the FDCPA because the false or misleading statements alleged in the Complaint are immaterial.  Under 15 U.S.C. § 1692e of the FDCPA, debt collectors are prohibited from making or using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  When determining whether a plaintiff stated a claim under § 1692e, courts consider whether the alleged misleading or false statements are material.  *Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 F. App'x 89, 94 (2d Cir. 2012); *Somerset v. Stephen Einstein & Assoc., P.C.*, 351 F. Supp. 3d 201, 207 (E.D.N.Y. 2019).  Additionally, courts in the Second Circuit must consider

---

[10] Plaintiff references the Collection Letter in her Complaint and therefore the Court may take judicial notice of the letter, which Plaintiff also attaches to her opposition to Defendant FV's motion to dismiss. (Mem. of Law by Pl. Diana Werner in Opp'n to Def. Friedman Vartolo, LLP's Mot. to Dismiss ("Pl.'s Def. FV Opp'n"), ECF No. 22.)

how the "least sophisticated consumer" would understand the communication. *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010).

In her Complaint, Plaintiff alleges that the Collection Letter was misleading for several reasons.

First, in the letterhead, Defendant FV is identified as "[a] limited liability partnership formed under New York State law" while the individual listed as the signatory for Friedman Vartolo LLP, Adam J. Friedman, is identified as an attorney. (Compl. ¶¶ 117 & 130.) Although one cannot "*mislead* the debtor regarding meaningful 'attorney' involvement in the debt collection process," attorneys may participate in the debt collection process beyond simply providing actual legal services. *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 364 (2d Cir. 2005). "[O]ur prior precedents demonstrate that an attorney can, in fact, send a debt collection letter without being meaningfully involved as an attorney within the collection process, so long as that letter includes *disclaimers* that should make clear even to the 'least sophisticated consumer' that the law firm or attorney sending the letter is not, at the time of the letter's transmission, acting as an attorney." *Id.*; *Altieri v. Overton, Russell, Doerr, & Donovan, LLP*, 281 F. Supp. 3d 254, 261, 264 (N.D.N.Y. 2017) (holding that a clear disclaimer that no attorney had personally reviewed the consumer's case was a sufficient disclaimer). Here, there is no disclaimer, let alone a clear disclaimer sufficient to provide clarity to the "least sophisticated consumer," that Mr. Friedman was not sending the letter in his capacity as an attorney.

Plaintiff also alleges that the Collection Letter is false and misleading because it is confusing and, according to the Complaint, falsely states that Plaintiff is in default due to her failure to make monthly payments when due or pay the principal. (Compl. ¶¶ 131 – 33.) These allegations, if true, are sufficient to support a facially plausible FDCPA claim. *See Altman v.*

*J.C. Christensen & Assoc., Inc.*, No. 13-CV-6502(ARR)(CLP), 2014 WL 2612124, at *3 (E.D.N.Y. June 11, 2014) (citing *Savino v. Comput. Credit, Inc.,* 164 F.3d 81, 85 (2d Cir.1998)) ("Generally, a deceptive collection letter will be one that contains confusing or contradictory language about the consumer's rights."); *Pellechia v. OneWest Bank, FSB*, No. 11-CV-1587(JCH), 2013 WL 1131609, at *4 (D. Conn. Mar. 18, 2013) (citing cases in which courts determined that false statements violated the FDCPA).

Accordingly, based on the face of the Complaint, (1) there was a debt collection action, the Collection Letter relating to the mortgage foreclosure; (2) Defendant FV was a debt collector; and (3) Defendant FV engaged in an act in violation of § 1692e of the FDCPA. Because the Complaint established a facially plausible FDCPA claim against Defendant FV, Defendant FV's motion to dismiss is denied.

## II.     Collateral Estoppel and Res Judicata Doctrines

Defendant Selene argues that Plaintiff's claims are barred under the doctrines of res judicata and collateral estoppel because they are all related to the Foreclosure Action and are matters Plaintiff raised or could have raised in that action. Res judicata and collateral estoppel are "related but distinct doctrines." *Flaherty v. Lang*, 199 F.3d 607, 612 (2d Cir. 1999).

### A.  Collateral Estoppel

For collateral estoppel, or issue preclusion, to apply under New York law, the party asserting collateral estoppel must satisfy two requirements:  First, there must be an identical issue which has necessarily been decided in the prior action and which is decisive of the present action, and second, the party to be precluded from relitigating the issue must have had a full and fair opportunity "to contest the decision now said to be controlling."  *Johnson v. Watkins*, 101 F.3d 792, 795 (2d Cir. 1996) (quoting *Schwartz v. Public Adm'r,* 24 N.Y.2d 65, 71 (1969)).

"[C]ollateral estoppel will not bar reconsideration of an issue if there is an inability to obtain review or there has been no review, even though an appeal was taken." *Johnson*, 101 F.3d at 795. Collateral estoppel is an equitable doctrine, and courts should consider fairness in the specific case when deciding whether a party should be collaterally estopped from litigating an issue. *PenneCom B.V. v. Merrill Lynch & Co., Inc.*, 372 F.3d 488, 493 (2d Cir. 2004).

Here, collateral estoppel does not apply. Neither Plaintiff's Complaint nor any of the material referenced or relied on in the Complaint show that the state court decided any of the issues in Plaintiff's Complaint which center around the loan modification agreement and Defendant Selene's statements to credit reporting agencies. *Graham v. Select Portfolio Servicing, Inc.*, 156 F. Supp. 3d 491, 508 (S.D.N.Y. 2016) (holding that collateral estoppel did not bar a plaintiff's loan modification claims because the "record does not show that the state court decided any of the issues presented by [the plaintiff's] loan modification claims"). The state court's Foreclosure Judgment failed to address any of the claims in the action currently before the Court.[11] (Def. Selene's Mot. to Dismiss, Ex. 8.)

**B. Res Judicata**

The doctrine of res judicata, also known as claim preclusion, bars re-litigation if (1) there was a previous action which resulted in a final adjudication on the merits; (2) the previous action involved Plaintiff or those in privity with Plaintiff; and (3) the claims asserted in Plaintiff's current action were or could have been raised in the previous action. *Soules v. Conn. Dep't of Emergency Serv. & Pub. Prot.*, 882 F.3d 52, 55 (2d Cir. 2018); *Overview Books, LLC v. United States*, 438 F. App'x 31, 33 (2d Cir. 2011). Consistent with res judicata, and pursuant to the Full Faith and Credit Clause of the Constitution, "federal courts must accord state court judgments

---

[11] *See supra* note 7.

the same preclusive effect as other courts within that state." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *see* U.S. Const. Art. IV, § 1.  Because the prior judgment in question here was issued by a New York state court, the Court's analysis is governed by New York state law.  *See Town of Ramopo v. Town of Clarkstown*, No. 16-CV-2004(NSR), 2017 WL 782500, at *6 (S.D.N.Y. Feb. 27, 2017).  New York has adopted a transactional approach to res judicata, which bars "a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)

Because the Foreclosure Action resulted in the Foreclosure Judgment, which is a final adjudication on the merits,[12] and current Plaintiff was the defendant in that action, the remaining question is whether Plaintiff could have raised her claims asserted in this action in the Foreclosure Action.  Courts have held that claims arising from a loan modification agreement entered into before the entry of a judgment of foreclosure and sale could have been brought as part of a foreclosure action.  *See Bailey v. Interbay Funding, LLC*, No. 17-CV-1457(JCH), 2018 WL 1660553, at *10 (D. Conn. April 4, 2018) (holding that res judicata barred the plaintiff's claim that the defendant failed to honor a loan modification agreement because the claim could have been raised in the state foreclosure action); *Wilson v. HSBC Bank, USA*, No. 16-CV-8405(NSR), 2018 WL 1449204, at *11 (S.D.N.Y. Mar. 22, 2018) (holding that the plaintiff's claim that the defendant violated a promise that if the plaintiff stopped making payments for ninety days, it would reduce the monthly mortgage payments was barred by res judicata because it should have been raised as a defense to the state forfeiture action); *Graham v. Select Portfolio*

---

[12] *Chestnut v. Wells Fargo Bank, N.A.*, No. 10-CV-4244(JS)(ARL), 2011 WL 838914, at *3 (E.D.N.Y. Mar. 2, 2011) ("[The] state court foreclosure judgment was a final judgment on the merits.").

*Servicing, Inc.*, 156 F. Supp. 3d 491, 510 – 11 (S.D.N.Y. 2016) (finding that the plaintiff's claim

was barred under res judicata because "[t]o the extent that there was an effective loan

modification agreement that [the defendant] failed to comply with, that could have been raised as

a defense to the foreclosure action."). In *Graham*, the plaintiff, who had defaulted on his

mortgage payments, was offered and accepted a loan modification agreement. 156 F. Supp. 3d

at 500. Despite making payments under the loan modification agreement, a foreclosure action

was initiated against the plaintiff. *Id.* at 500 – 01. The plaintiff sued, alleging, among other

claims, fraudulent misrepresentation and breach of contract relating to the loan modification

agreement. *Id.* at 501. The court held that the plaintiff's claims arising from the loan

modification agreement were barred by res judicata because those claims "arise out of the same

set of facts as the foreclosure proceeding in state court." *Id.*at 508, 511. "[The plaintiff] could

have brought his loan modification claims in the state foreclosure action." *Id.* at 510.

Similar to the circumstances in *Graham*, Plaintiff's claims arise from the same

transaction at the heart of the Foreclosure Action, the Mortgage Loan and Plaintiff's default. In

the case currently before the Court, Plaintiff's claims against Defendant Selene arise from two

main allegations.[13] First, Plaintiff alleges that "Defendant accused her of default and threatened

her with foreclosure and the prospect of losing her home." (Compl. ¶ 41) This allegation

involves the same essential facts as the Foreclosure Action, which was occurring because

Plaintiff had defaulted on the Mortgage Loan. Second, Plaintiff alleges that Defendant Selene

breached a contract, presumably the Trial Modification Plan Letter, by terminating the contract

and reporting Plaintiff to credit reporting agencies. (*Id.* ¶ 43.) However, this allegation, too,

---

[13] Plaintiff does not specify the date on which these events occurred, (Compl. ¶¶ 41 & 43) but because the Court is required to make all reasonable inferences in Plaintiff's favor, it infers that these events occurred after the Foreclosure Judgment was issued.

arises from the Mortgage Loan. Based on Plaintiff's default on the Mortgage Loan, Defendant

Selene sent Plaintiff the Trial Modification Plan Letter which would have, provided Plaintiff

accepted and complied with all terms, modified the repayment schedule for the Mortgage Loan.

Plaintiff, according to her Complaint, accepted the modification on November 9, 2015, before

the Foreclosure Judgment was issued. (*Id.* ¶¶ 21 & 29.) Plaintiff found the Trial Modification

Plan Letter to be confusing, and she requested clarification from Defendant Selene around

November 19, 2015 (*Id.* ¶ 31); but Plaintiff did not raise this issue to the state court as part of the

Foreclosure Action which was at that time still pending. Plaintiff, based on the face of the

Complaint and documents of which the Court may take judicial notice, did not satisfy the terms

proposed in the Trial Modification Plan Letter,[14] the Foreclosure Action proceeded to a

Foreclosure Judgment, and Plaintiff continued to be in default on her mortgage through the

events alleged in the Complaint. Thus, because her claims against Defendant Selene arise from

the same facts as that at issue in the Foreclosure Action and could have been brought as part of

that action, those claims are now barred by res judicata.

## III. State Law Claims

Even if the Court did not determine that Plaintiff's claims were barred by res judicata,

they would still fail under Rule 12(b)(6) because Plaintiff failed to state a facially plausible claim

for relief.

### A. Breach of Contract

To make out a claim for breach of contract under New York law, a plaintiff must prove

four elements: (1) the existence of a contract, (2) performance of the contract by one party, (3)

---

[14] *See supra* note 6.

breach by the other party, and (4) damages suffered as a result of the breach. *See, e.g., Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011).

For a contract to exist, there must be "a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *Express Indus. & Terminal Corp. v. N.Y. State Dep't of Transp.*, 715 N.E.2d 1050, 1053 (N.Y. 1999). "Generally, courts look to the basic elements of the offer and the acceptance to determine whether there is an objective meeting of the minds sufficient to give rise to a binding and enforceable contract." *Id.* The meeting of the minds must be "on all essential terms." *Opals on Ice Lingerie v. Bodylines Inc*., 320 F.3d 362, 372 (2d Cir. 2003) (quoting *Schurr v. Austin Galleries of Ill.,* 719 F.2d 571, 576 (2d Cir. 1983)). "This is because an enforceable contract requires mutual assent to the essential terms and conditions thereof." *Id.* If mutual assent from both parties to all material terms is ambiguous, the court cannot find, let alone enforce, a contract. *Prince of Peace Enter., Inc. v. Top Quality Food Mkt., LLC*, 760 F. Supp. 2d 384, 397 (S.D.N.Y. 2011). There is ambiguity if the terms of the contract could "suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Id.* at 397 (quoting *Law Debenture Tr. Co. of New York v. Maverick Tube Corp.,* 595 F.3d 458, 466 (2d Cir.2010)) (internal quotation mark omitted).

Here, based on the Complaint and other documents referenced in the Complaint or relied on by Plaintiff, Plaintiff fails to establish a facially plausible claim that there was a valid contract to modify the Mortgage Loan. Plaintiff never signed the page of the Trial Modification Plan Letter labeled "Authorization Agreement for Preauthorized Payments." As discussed above, that

page contained what Plaintiff identified as "Agreement A" and this Court refers to as the second schedule, which Plaintiff alleges that she satisfied. However, there was never a meeting of the minds between the parties sufficient to form a contract. Plaintiff herself, through her Complaint, admits that she was confused about the requirements of the proposed agreement and alleges that there were two conflicting payment schedules proposed in the Trial Modification Plan Letter. (Compl. ¶ 31.) Defendant Selene, according to the Complaint, requested the initial payment in the amount required under the first, not the second, schedule. (*Id.*¶¶ 27 & 29.) Based on the face of the Complaint and from an objective analysis of the Trial Modification Plan Letter, there was an ambiguity about the payment schedule, an essential term of the contract, and thus there could not have been a meeting of the minds between the parties. *See Prince of Peace Enter., Inc.*, 760 F. Supp. 2d at 397. Moreover, the amounts of her payments did not conform with the schedule outlined in the second schedule. For instance, Plaintiff paid only $2,543.76 for her December payment even though the second schedule required Plaintiff to pay $2,943.76. (Compl. ¶ 32); (Pl.'s Def. Selene Opp'n (attaching check for December payment)).

### B.  Unjust Enrichment[15]

To state a claim for unjust enrichment, a quasi-contract claim, the plaintiff must demonstrate that " '(1) the other party was enriched, (2) at the other party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered.' " *Mahoney v. Endo Health Sol., Inc.*, No. 15-CV-9841, 2016 WL 3951185, at *11 (S.D.N.Y. July 20, 2016) (quoting *Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 516

---

[15] Plaintiff only addressed the issues of collateral estoppel, res judicata, and breach of contract in her opposition to Defendant Selene's motion to dismiss. Had the Court not already determined that res judicata applied, it would have the discretion to determine that Plaintiff's claims against Defendant Selene, except the breach of contract claim, were abandoned. *Tulino v. City of New York*, No. 15-CV-7106 (JMF), 2016 WL 2967847, at *2 (S.D.N.Y. May 19, 2016) (dismissing claims unaddressed in plaintiff's opposition as abandoned).

(2012)); *Tobin v. Gluck*, 11 F. Supp. 3d 280, 295 (E.D.N.Y. 2014). However, under New York law, an unjust enrichment claim "is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012). If the plaintiff simply restates a contract or tort claim, unjust enrichment is not available. *See Mahoney*, 2016 WL 3951185, at *11 (" '[U]njust enrichment is not a catchall cause of action' and it 'is not available where it simply duplicates, or replaces, a conventional contract or tort claim.' "); *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 290 (S.D.N.Y. 2014) ("Yet, an unjust enrichment claim cannot survive 'where it simply duplicates, or replaces, a conventional contract or tort claim.' ").

Here, Plaintiff alleges that she is entitled to recover for unjust enrichment because she had an "actual and implied" contract with Defendant Selene and because Defendant Selene "cannot, in good conscience and equity, retain the benefits from their actions of breach of contract." (Compl. ¶¶ 80 – 81.) Plaintiff's unjust enrichment claim is in fact a shell to allow Plaintiff to restate her breach of contract claim, and not itself a claim upon which relief can be granted. *See Mahoney*, 2016 WL 3951185, at *11. Unjust enrichment "exists only in the absence of a valid contract." *Tobin v. Gluck*, 11 F. Supp. 3d 280, 295 (E.D.N.Y. 2014) (quoting *Oorah, Inc. v. Schick,* 552 F. App'x 20, 23, at *2 (2d Cir. Jan. 15, 2014)). Accordingly, because based on the face of Plaintiff's Complaint, her unjust enrichment claim is no different than her breach of contract claim, it would be denied.

### C.  New York General Business Law § 349

New York law proscribes "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in th[e] state." GBL § 349(a). To state a

claim pursuant to § 349, a plaintiff must allege (1) that the defendant's acts were consumer oriented; (2) that the acts or practices are "deceptive or misleading in a material way,"; and (3) that the plaintiff has been injured as a result. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25, 623 N.Y.S.2d 529, 647 N.E.2d 741 (1995); *accord Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009); *City of New York v. Smokes-Spirits.com, Inc.*, 12 N.Y.3d 616, 621 (2009); *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 (2002). To be consumer oriented, "[t]he conduct need not be repetitive or recurring but defendant's acts or practices must have a broad impact on consumers at large." *N.Y. Univ. v Cont'l Ins. Co.*, 87 N.Y.2d 308, 320 (1995)

Although Plaintiff alleges that Defendant Selene made "numerous false representations to Plaintiff" (Compl. ¶ 61), Plaintiff fails to claim that Defendant Selene's allegedly deceptive acts were consumer-oriented, and there are no facts in the Complaint to permit the Court to reasonably infer that Defendant Selene's actions were consumer oriented. Plaintiff states that she is a consumer (*id.* ¶ 70), but this allegation does not imply any broad impact on consumers at large and do not otherwise support a claim under § 349 of the New York General Business Law. *Cf. Shapiro v. Berkshire Life Ins. Co.*, 212 F.3d 121, 126 (2d Cir. 2000) (holding that a private dispute about coverage under a particular insurance policy was insufficient to demonstrate consumer-oriented conduct); *Cross v. State Farm Ins. Co.*, No. 10-CV-1179, 2011 WL 4916534, *4 (N.D.N.Y. Oct. 17, 2011) ("[S]peculat[ion] that others have been treated in similar fashion . . . [is] insufficient to state a plausible General Business Law § 349 claim.").

### D.  Bad Faith and Breach of Fiduciary Duty

Plaintiff broadly alleges that Defendant Selene "owed Plaintiff a fiduciary duty to deal with her in good faith and in a fair manner," and failed to do so.  (Compl. ¶¶ 76 & 86.)

To the extent that Plaintiff claims that Defendant Selene was acting in bad faith by breaching the mortgage loan modification agreement, that claim would be dismissed as duplicative of a breach of contract claim. *O.K. Petroleum Distrib. Corp. v. Travelers Indem. Co.*, No. 09-CV-10273(LMM), 2010 WL 2813804, at *3 (S.D.N.Y. July 15, 2010); *see also Pfeffer v. Harleysville Grp., Inc.*, No. 10-CV-1619(ALC), 2011 WL 6132693, at *10 (E.D.N.Y. Sept. 30, 2011) *aff'd,* 502 F. App'x 28 (2d Cir. 2012). Any claim that Defendant breached the implied covenant of good faith and fair dealing would also fail. There is no separate cause of action for breach of the implied covenant of good faith and fair dealing "when a breach of contract claim, based on the same facts, is also pled." *Harris v. Provident Life & Accident Ins. Co.,* 310 F.3d 73, 81 (2d Cir. 2002).

Turning to Plaintiff's claim that Defendant Selene breached its fiduciary duty, that claim would also be dismissed. Under New York law, a claim for breach of fiduciary duty consists of a "breach by a fiduciary of a duty owed to plaintiff; defendant's knowing participation in the breach; and damages." *SCS Commc'ns, Inc. v. Herrick Co.*, 360 F.3d 329, 342 (2d Cir.2004). "A debtor-creditor relationship, standing alone, does not create a fiduciary duty of the latter to the former." *Fallon v. Wall St. Clearing Co.,* 182 A.D.2d 245, 250 (N.Y. App. Div. 1st Dep't 1992); *see also Greenberg, Trager & Herbst, LLP v. HSBC Bank USA*, 73 A.D.3d 571, 572 (N.Y. App. Div.1st Dep't 2010) (affirming dismissal of "claim against [a] bank for negligent misrepresentation absent a fiduciary relationship, which does not exist between a bank and its customer"). Under the law, Defendant Selene had no fiduciary duty to Plaintiff, and the Complaint offers no unusual circumstances from which the Court can infer creation of a fiduciary relationship.

### E.  Misrepresentation

"Under New York law, the elements of common law fraud are a material, false representation, an intent to defraud thereby, and reasonable reliance on the representation, causing damage to the plaintiff." *Chanayil v. Gulati*, 169 F.3d 168, 171 (2d Cir. 1999) (citation and internal quotation marks omitted).  Plaintiff claims that Defendant Selene intentionally "misrepresented the full nature of [its] agency . . . [by] omitting material facts and making numerous false representations to Plaintiff for the obvious purpose of forcing the sale of Plaintiff's property . . . ." (Compl. ¶ 89.)  However, any support Plaintiff's Complaint contains for a fraud claim is in the form of conclusory statements, and courts are not bound to credit mere conclusory statements when deciding a motion to dismiss.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

### F.  Defamation

Under New York law, a plaintiff must meet four elements to state a claim for defamation: (1) the defendant made a false and defamatory statement about the plaintiff; (2) the defendant published those statements to a third party without authorization; (3)  the publisher was at fault; and (4) the defamatory statement was defamation *per se* or caused special harm to the plaintiff. *Moritz v. Town of Warwick*, No. 15-CV-5424(NSR), 2017 WL 4785462, at *5 (S.D.N.Y. Oct. 19, 2017).

Here, Plaintiff alleges that Defendant Selene caused the credit reporting agencies to publish "slanted and defamatory statements about Plaintiff to third parties and/or others, thereby placing her ability to seek and find credit in jeopardy."  (Compl. ¶ 95.)  However, Plaintiff fails to identify any specific defamatory statement Defendant Selene allegedly made to the agencies. Assuming she alleges that the defamatory statement was that she was in default on her mortgage

loan, this statement was true. Plaintiff was in default of her Mortgage Loan. "[A] court may dismiss a complaint alleging defamation where it finds the complained of statements to be substantially true and therefore not reasonably susceptible to defamatory connotations." *Tannerite Sports, LLC v. NBCUniversal Media LLC*, 135 F. Supp. 3d 219, 233 (S.D.N.Y. 2015).

### G. Negligent and Intentional Infliction of Emotional Distress

The Court would also dismiss Plaintiff's emotional distress claims against Defendant Selene had it not already held that res judicata bars Plaintiff's claims against Defendant Selene.

In New York, a plaintiff may establish negligent infliction of emotional distress under one of two theories, (1) the bystander theory; or (2) the direct duty theory. *Mortise v. United States*, 102 F.3d 693, 696 (2d Cir. 1996). A plaintiff shows that she is entitled to recover under the bystander theory if the defendant's negligence causes her to be threatened with serious physical harm and as a result she suffers emotional injury from witnessing the death or serious bodily injury of a member of her immediate family. *Id.* Under the direct duty theory, however, a plaintiff states a claim if she shows that she suffered an emotional injury from the defendant's breach of a duty which unreasonably endangered her own physical safety. *Id.*

Plaintiff alleges that she has suffered emotional distress as a result of Plaintiff's actions, (Compl. ¶ 98 – 102) but this is not enough to support a claim for negligent infliction of emotional distress. She does not allege that Defendant Selene ever threatened her with serious physical harm or that Defendant Selene committed any breach of duty endangering her physical safety.

A plaintiff states a claim for intentional infliction of emotional distress if she shows: (1) extreme and outrageous conduct; (2) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and injury; and

(4) severe emotional distress." *Chanko v. Am. Broad. Co.*, 27 N.Y.3d 46, 56 (2016) (internal

quotation marks omitted).  Because the claim of intentional infliction of emotional distress is

generally disfavored under New York law, *Williams v. City of Mount Vernon*, 428 F. Supp. 2d

146, 160 (S.D.N.Y. 2006), a plaintiff must typically show that the defendant's conduct has been

"so extreme in degree" as to exceed "all possible bounds of decency." *See Murphy v. Am. Home

Prods. Corp.*, 58 N.Y.2d 293, 303 (1983).

Here, Plaintiff's Complaint fails to plausibly show that Defendant Selene acted in an

extreme way, and certainly not that Defendant Selene acted in so extreme a way as to exceed all

bounds of decency.  Accepting all of Plaintiff's allegations as true, Defendant Selene threatened

her with foreclosure on her home and reported Plaintiff to credit reporting agencies.  This

conduct is hardly outrageous; as discussed above, Plaintiff was in default on her Mortgage Loan.

Defendant Selene's actions, as alleged in the Complaint, never outrageously exceeded those of a

creditor attempting to collect on a debt owed.  Additionally, while Plaintiff alleges that

Defendant Selene's conduct has caused her "severe pain" and "mental anguish and anxiety,"

(Compl. ¶¶ 110 – 11) these conclusory statements do not indicate that Plaintiff has in fact

suffered mental anguish. *See Calizaire v. Mortg. Elec. Registration Sys., Inc.*, 14-CV-

1542(CBA)(SMG),  2017 WL 895741, at *8 (E.D.N.Y. Mar. 6, 2017) ("[Plaintiff] is no doubt

distressed, but he has alleged no specific facts to explain why he has endured "serious

mental anguish" above and beyond the legitimate stresses typically incident to a foreclosure.").

"[C]ourts have generally found that an [intentional infliction of emotional distress] claim will not

lie in a case . . . where a debt collection effort or a foreclosure results in inconvenience,

frustration, embarrassment, and stress, but not serious mental anguish." *Grimes v. Fremont Gen.

Corp.*, 933 F. Supp. 2d 584, 612 (S.D.N.Y. 2013)

### H.  Unconscionability and Tort of Outrage

Plaintiff alleges that Defendant Selene engaged in unconscionable conduct.  However, in New York, unconscionability is an affirmative defense against the enforcement of a contract.  *Ng v. HSBC Mortg. Corp.*, No. 07-CV-5434(RRM)(VVP), 2011 WL 3511296, at *8 (E.D.N.Y. Aug. 10, 2011).  "A cause of action for unconscionability may not be used to seek affirmative relief." *Id.*  Here, Plaintiff impermissibly attempts to use unconscionability as "a shield, not a sword," *Super Glue Corp. v Avis Rent A Car Sys.*, 132 A.D.2d 604, 606, (N.Y. App. Div. 2d Dep't 1987).

New York does not recognize the tort of outrage, and so that claim would also be dismissed. *See Scholes v. Am. Kennel Club, Inc.*, No. 98-CV-6538(LBS), 1999 WL 799532, at *5 (S.D.N.Y. Oct. 7, 1999); *see also Turley v. ISG Lackawanna, Inc*., 774 F.3d 140, 157 n.17 (2d Cir. 2014).

**CONCLUSION**

For the foregoing reasons, Defendant FV's motion to dismiss Plaintiff's Complaint is DENIED and Defendant Selene's motion to dismiss Plaintiff's Complaint is GRANTED. Defendant FV is directed to file an answer on or before April 12, 2019 and Plaintiff and Defendant FV are directed to confer, complete, and submit to the Court the attached case management plan on or before April 19, 2019.

The Clerk of the Court is respectfully directed to terminate the motions at ECF Nos. 19 and 27 and remove Defendant Selene from the caption. This constitutes the Court's Opinion and Order.

Dated:    March 22, 2019                  SO ORDERED:
          White Plains, New York

                                             NELSON S. ROMÁN
                                    United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Rev. Jan. 2012

-------------------------------------------------------------x

Plaintiff(s),

- against -

**CIVIL CASE DISCOVERY PLAN
AND SCHEDULING ORDER**

Defendant(s).                    _____ CV _____ (NSR)

-------------------------------------------------------------x

This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):

1.  All parties [consent] [do not consent] to conducting all further proceedings before a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c). The parties are free to withhold consent without adverse substantive consequences. (If all parties consent, the remaining paragraphs of this form need not be completed.)

2.  This case [is] [is not] to be tried to a jury.

3.  Joinder of additional parties must be accomplished by _____.

4.  Amended pleadings may be filed until _____.

5.  Interrogatories shall be served no later than _____, and responses thereto shall be served within thirty (30) days thereafter. The provisions of Local Civil Rule 33.3 [shall] [shall not] apply to this case.

6.  First request for production of documents, if any, shall be served no later than _____.

7.  Non-expert depositions shall be completed by _____.

    a.  Unless counsel agree otherwise or the Court so orders, depositions shall not be held until all parties have responded to any first requests for production of documents.

    b.  Depositions shall proceed concurrently.

    c.  Whenever possible, unless counsel agree otherwise or the Court so orders, non-party depositions shall follow party depositions.

8. Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9. Requests to Admit, if any, shall be served no later than _____.

10. Expert reports shall be served no later than _____.

11. Rebuttal expert reports shall be served no later than _____.

12. Expert depositions shall be completed by _____.

13. Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14. **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15. Any motions shall be filed in accordance with the Court's Individual Practices.

16. This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17. The Magistrate Judge assigned to this case is the Hon. _____.

18. If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19. The next case management conference is scheduled for _____, at _____. (The Court will set this date at the initial conference.)

SO ORDERED.

Dated: White Plains, New York

_____

_____
Nelson S. Román, U.S. District Judge